## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

TRENT WARREN,
#Y20422,

                **Plaintiff,**

**Case No. 20-cv-00548-MAB**

v.

ILLINOIS DEPARTMENT OF
CORRECTIONS,
WARDEN BROOKHART,
LT. MCDONALD,
MISS FLATLEY,
LT. PHILLIPS,
WEXFORD MEDICAL
CORPORATION,
NURSE PRACTIONER STOVER,
OFFICER KIRKWOOD,
OFFICER SLOAN,
NURSE SWELTY,
DR. PITTMAN,
LIEUTENANT JOHN DOE,
JOHN DOE 1,
JOHN DOE 2,
JOHN DOE 3,
JOHN DOE 4,
JOHN DOE 5,
JOHN DOE 6,
JOHN DOE 7,
JOHN DOE 8,
JOHN DOE 9,
JOHN DOE 10,
JOHN DOE 11,
JOHN DOE 12,
JOHN DOE 13,
JOHN DOE 14,
LIEUTENANT JANE DOE,
SERGEANT JOHN DOE 1,
SERGEANT JOHN DOE 2,
JANE DOE 4, *mental health staff,* and
NURSE JANE DOE 1,

                **Defendants.**

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Plaintiff Trent Warren, an inmate of the Illinois Department of Corrections who is currently incarcerated at Pinckneyville Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights occurring while at Lawrence Correctional Center ("Lawrence"). He seeks monetary damages and injunctive relief.

The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A.[1] Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). The Court must also consider whether any claims are improperly joined and subject to severance or dismissal. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

### MOTION TO ADD DEFENDANTS

Warren drafted the Complaint by dividing his allegations into five different counts labeled Count 1, Count 2, Count 3, Count 3 Pt. 2, and Count 4. (Doc. 1, pp. 9, 23, 45, 48).

---

[1] The Court has jurisdiction to screen the Complaint in light of Warren's consent to the full jurisdiction of a magistrate judge and the Illinois Department of Corrections' and Wexford's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding between the Illinois Department of Corrections, Wexford, and this Court.

64). He includes a separate list of parties prior to each count, rather than listing all of the defendants collectively at the beginning of the Complaint in the case caption. The list of parties for Count 4 was excluded, and Warren has filed a motion asking the Court to include Warden Brookhart, Dr. Pittman, Nurse Practitioner Stover, Wexford Medical Corporation, and Nurse Swelty as defendants for Count 4. (Doc. 12). The Motion is granted. As Warden Brookhart and Nurse Practitioner Stover are already listed as Defendants on the docket, the Clerk of Court will be directed to add only Dr. Pittman and Nurse Swelty as Defendants.

The Court further notes that in the list of parties for both Counts 1 and 2, as designated by Warren, he lists as defendants John Does 1-8. The Complaint contains allegations against various John Does, but they are not clearly identified. Throughout the Complaint, he labels different individuals with the same John Doe or John Doe 1 designation. For clarity, the Court has designated a different number for each John Doe referenced. The Clerk of Court will be directed to modify the docket according to these new labels.

### THE COMPLAINT

In the Complaint, Warren alleges that he endured unconstitutional conditions of confinement while being held in crisis cell R5BL15 from June 30, 2019, until July 2, 2019, and segregation cell AU21 from July 2, 2019 until July 12, 2019. He was denied medical treatment for injuries incurred during this time and eventually received inadequate medical treatment for the alleged injuries. Warren wrote grievances and drafted a lawsuit regarding these conditions, which resulted in retaliation by staff.

Warren also claims that he has not been provided adequate medical treatment for his shoulder injury, hernia, and hearing loss.

*Crisis Cell*

On June 30, 2019, Warren was walked to segregation by Lieutenant John Doe. (Doc. 1, p. 11). While being processed for segregation, Warren asked for a crisis team because he was feeling depressed. Warren was assessed by Mental Health Provider Flatley, who referred him to go on crisis watch. Warren was then escorted by crisis watch officers, John Doe 1 and John Doe 2, to crisis cell R5BL15. Upon arrival at the cell, he and the officers could smell a strong stench of urine and feces. He asked for a different cell and informed the officers that the cell needed to be cleaned. They told Warren that he was "going to have fun in the[re] and it's what you get for making us do extra work before shift change. And trying to play this mental health role games." (*Id.*). The officers closed the door, and Warren saw that the mattress was soaked with urine. (*Id.* at p. 12). He also saw blood stains and what looked to be semen on the mattress, and dried blood on the surface under the mattress. Warren yelled for John Doe 1 and John Doe 2 and told them about the mattress. They laughed and directed him to tell second shift because they were going home. In addition to the soiled mattress, the cell had dirty floors, spiders, cobwebs, and moldy food on the floor. (*Id.*). The sink was broken and only dispensed hot water. (*Id.* at p. 13). The toilet was dirty with "built up feces inside," and both the sink and the toilet were "rusted out." It was clear the cell had not been cleaned. (*Id.*).

Warren waited until the 3:00 p.m. shift change and notified Officers John Doe 3

and John Doe 4[2] of the condition of his cell. (Doc. 1, p. 13). John Doe 3 told him the cell had already been cleaned and that there were no more cells or mattresses available. Warren asked John Doe 3 for a lieutenant or sergeant ("white shirt"), and John Doe 3 told him to go sit down. Every fifteen minutes when an officer would come by the cell on rounds, Warren would notify John Doe 3 and John Doe 4 about his cell, but they continued to deny him a new mattress or cell. (*Id.*).

During this time, the temperature outside was around 90 degrees, and the crisis cell was humid with no air flow. (Doc. 1, p. 14). Warren was not given any ice or cold water to cool down. At the time, he was also on the psychotropic medication, Effexor, which is a heat sensitive medicine. As a result of the humidity, high temperature, and his medication, Warren fainted in his cell around 4:00 p.m. When he awoke from fainting, Warren requested to be evaluated by a medical technician. John Doe 3 and John Doe 4 laughed and ignored his request for medical treatment. For the rest of the day, he repeatedly asked for medical attention and to speak with a white shirt. John Doe 3 and John Doe 4 continued to deny his requests. (*Id.*). Warren also asked for medical treatment and a new mattress from relief officer, John Doe 5,[3] but John Doe 5 also refused to do anything. (*Id.* at p. 15).

Around 7:00 p.m., Lieutenant Jane Doe and Sergeant John Doe 1[4] brought another inmate to crisis watch. (Doc. 1, p. 15). Warren informed them that he had been suffering from complications with his medication and heat exhaustion and needed medical

---

[2] Identified in the Complaint as second shift officers, John Doe 1 and John Doe 2. (Doc. 1, p. 13).
[3] Identified in the Complaint as John Doe 1, relief officer. (Doc. 1, p. 15).
[4] Identified in the Complaint as Sergeant John Doe.

attention. (*Id.*). Lieutenant Jane Doe and Sergeant John Doe 1 told him that if he was breathing than he was alright and that he would not get medical attention unless he quit breathing. (*Id.* at p. 16). Warren also informed them about the conditions of his cell, but he was not given a clean mattress or clean cell. (*Id.*).

That night, he was not given his medication and suffered withdraw symptoms. (Doc. 1, p. 16). At around 2:00 a.m. on July 1, 2019, he was served breakfast by John Doe 6.[5] (*Id.* at p. 17). Warren asked him for soap or alcohol free hand sanitizer to wash his hands and for toilet paper. John Doe 6 refused his requests. He also told John Doe 6 about his cell conditions, and John Doe 6 said that nothing could be done. As for the medical issue, John Doe 6 said it seemed that Warren was fine now, and so, he was not going to call a medical technician. (*Id.*).

Later that morning, on July 1, 2019, Warren woke up with a severe migraine. (Doc. 1, p. 18). He was dizzy and nauseated. Warren was also experiencing sensitivity to light, stomach cramps, and fatigue, and his heart was thumping sporadically. Warren had a huge knot on his forehead and a black eye from fainting the day before. He continued to seek medical attention and a clean cell from the officers, including John Doe 7.[6] He also requested to speak to white shirt but all his requests were denied. (*Id.*) Later, he observed he had multiple bug bites across his body that were red, swollen, itched, and hurt. (*Id.* at p. 19).

Around 10:30 a.m., Warren was taken to an interview room for a follow-up

---

[5] Identified in the Complaint as third shift officer John Doe. (Doc. 1, p. 17).
[6] Identified in the Complaint as John Doe. (Doc. 1, p. 18).

appointment with the mental health provider, Flatley. (Doc. 1, p. 19). He told Flatley about the conditions of his cell and the complications with his medication. She saw his forehead and black eye and did nothing to help him see a medical provider or obtain a new cell. She respond by telling Warren that next time he better think of not coming over to crisis watch and making her do all the extra paperwork. (*Id.*).

Warren was returned to his crisis watch cell and continued to experience complications from his medication, heat exhaustion, and dehydration. (Doc. 1, p. 21). He passed out multiple more times. (*Id.*). He sought medical attention, but was denied.[7] He also was not given any ice, cool drinking water, hand soap, or sanitizer. (*Id.* at p. 21).

*Segregation Cell*

On July 2, 2019, Warren left crisis watch and was placed into a segregation cell. (Doc. 1, p. 25). That night he was woken up by bugs biting and crawling on him. He turned on the light and saw 1,500 bugs flying around the room and crawling inside the toilet, on the floor, and on the window screen. Warren went to close the window and saw that the bugs were coming from a bird nest that contained a dead bird, located between the screen and outside window. He tried to get the officers' attention by hitting the panic button, screaming, and pounding on the door. (*Id.*). Warren was ignored by the second shift officers who were in the control center and did not respond to the panic button. (*Id.* at p. 26). He had to wait until third shift officers came and did count at 11:00 p.m. to speak with an officer. Warren informed officer John Doe 8[8] of the situation and showed him

---

[7] Warren states he was denied medical attention by John Does 1-3. (Doc. 1, p. 21). As he has identified several separate individuals as John Does, it is unclear which Defendants this allegation is asserted against.
[8] Identified in the Complaint as third shift officer John Doe 1. (Doc. 1, p. 26).

the bugs in the cell. John Doe 8 said he would tell the sergeant and the lieutenant when he finished with count. (*Id.*). Warren did not see another officer again until 2:00 a.m. when breakfast was delivered. (*Id.* at p. 27). The breakfast shift officer told Warren he would have to wait until first shift. (*Id.*).

On July 3, 2019, Warren notified the first shift officer about the bug situation during the night. (Doc. 1, p. 27). He asked to be placed in another cell and for maintenance to be informed about the bugs and the bird nest. The officer said he would inform Lieutenant Phillips and Sergeant John Doe 2.[9] Warren saw the officer an hour later and asked him for an update. The officer said Lieutenant Philips and Sergeant John Doe 2 were aware of the situation and nothing could be done at the moment. (*Id.*).

At 12:00 p.m., Warren was assigned a cellmate. (Doc. 1, p. 28). Warren told the officer who had escorted his cellmate about the bugs and the bird nest. The officer said he would inform Lieutenant Phillips and Sergeant John Doe 2. Warren told him they have already been told, and the officer walked away. Warren continued to inform officers throughout the day that he needed to be placed in another cell before night. Defendant John Doe 9[10] refused to do anything. Warren asked to speak directly to the sergeant or lieutenant and was told that there was no sergeant or lieutenant working that day. Warren was forced to stay another night in the cell. (*Id.*). He and his cellmate awoke to thousands of bugs in the cell biting them. (*Id.* at p. 29). Warren tried get the attention of

---

[9] Identified in the Complaint as Sergeant John Doe. (Doc. 27). It appears to the Court this is a different Sergeant than Sergeant John Doe 1 who Warren spoke with while in the crisis cell, the Court designates this defendant as Sergeant John Doe 2.
[10] Identified in the Complaint as Defendant John Doe #2. (Doc. 1, p. 28).

officers by yelling, banging, and pressing the panic button but was ignored. He spoke to John Doe 10[11] when breakfast trays were being delivered on July 4, 2019. John Doe 10 told Warren there was nothing that could be done about the bugs in the cell and "its not my problem." He continued to inform officers and was forced to endure the bugs another night. (*Id.* at p. 30).

On July 5, 2019, Warren spoke to mental health staff Jane Doe 4. (Doc. 1, p. 30). Warren requested to be moved to a different cell. (*Id.*). She said all that she could do was inform the officers. (*Id.* at p. 31). Warren continued to seek relief from second shift officers. When he spoke to the officers who brought his breakfast tray on July 6, 2019, they told him to stop asking to be moved. (*Id.*). He spoke more to officers throughout the day and filed an emergency grievance.

On July 7, 2019, Warren continued to ask officers to be moved. (Doc. 1, p. 32). He spoke to an officer he had talked to days before and asked him about the situation regarding moving cells.[12] The officer stated he knew nothing of the situation but would speak to the lieutenant and sergeant. Warren spoke again to the officer forty-five minutes later, and the officer told Warren that his cell move was not a priority. He informed John Doe 11,[13] who told Warren that he didn't "have time for [your] shit." At around 4:00 p.m., Warren told John Doe 11 that he needed to speak with a lieutenant in person to be moved, and John Doe 11 refused his request. (*Id.*).

---

[11] Identified in the Complaint as Officer John Doe. (Doc. 1, p. 29).
[12] Warren identifies this officer as John Doe. Because he refers to several officers as John Doe, it is not clear who he alleges he notified a second time. (Doc. 1, p. 32).
[13] Identified in the Complaint as second shift officer John Doe. (Doc. 1, p. 32).

That night, Warren woke up around 11:45 p.m. choking on a bug. (Doc. 1, p. 33). He alerted officers by hitting the panic button. Once he could breath, he also screamed for officers. Warren also felt something lodged in his ear. He was able to flush the bug out of his ear using water from the sink but continued to have difficulties breathing. Warren's calls for help were ignored, and no one came to the cell. Warren told John Doe 12[14] that he needed a medical technician because he had inhaled a bug. John Doe 12 told him to submit a sick call. (*Id.*).

On July 8, 2019, Warren continued to inform officers about the situation in his cell and seek medical assistance, specifically from John Doe 13.[15] (Doc. 1, p. 34). He was not moved and did not receive medical attention.

On July 9 and July 10, 2019, he spoke to the wing officer, John Doe 14,[16] about the status of his move to a new cell or the removal of the bird nest. John Doe 14 said that the lieutenant was aware of the situation and the move is up to him. (Doc. 1, p. 34-35). He also spoke to a mental health provider on July 9, 2019. (*Id.* at p. 34).

Warren was not moved to a new cell until July 12, 2019. (Doc. 1, p. 35). That same day he was also seen by Nurse Jane Doe 1 for fainting while in crisis watch. (*Id.*). He told Nurse Jane Doe 1 that he was having complications with his medication and keeping his body temperature down and as a result, he fainted multiple times resulting in him hitting his head. (*Id.*) He was experiencing migraines, which caused him to throw-up and have blurry vision, fatigue, and light sensitivity. (*Id.* at p. 36). Warren also told Nurse Jane Doe

---

[14] Identified in the Complaint as John Doe, who was passing out breakfast trays. (Doc. 1, p. 33).
[15] Identified in the Complaint as second shift officer Defendant John Doe. (Doc. 1, p. 34).
[16] Identified in the Complaint as seg A wing officer. (Doc. 1, p. 34).

1 about the bugs he inhaled and that he was experiencing shortness of breath. Nurse Jane Doe 1 did not document his symptoms or assess him for a concussion. Warren was referred to the nurse practitioner. (*Id.*).

Warren continued to fill out nurse sick call slips and was scheduled for a nurse sick call appointment on July 15, 16, and 17. (Doc. 1, p. 37). He was not notified of these appointments and as a result, he missed them. For the July 15 appointment it was falsely recorded that he refused to attend. (*Id.*). On July 17, 2019, he went to asthma clinic for his 6 month check-up. Warren informed Nurse Practitioner Stover[17] that he had not had any issues with his asthma due to regular use of his inhaler, but he was having trouble breathing because of the bugs he had swallowed while sleeping. (*Id.* at p. 37-38). Specifically, when he would lay down at night, Warren's throat would feel tight causing anxiety. He asked for antibiotics to prevent him from developing a lung infection and breathing treatments. Nurse Stover told Warren that he was only being seen for his asthma and was denied help for his medical issues related to swallowing bugs. (*Id.* at p. 38). Nurse Stover also treated Warren for hitting his head and gave him Tylenol. However, she did not take x-rays or assess Warren for internal damage from a possible concussion. His sensitivity to light was also not treated. (*Id.* at p. 39).

***Confiscation of Property***

Prior to Warren being placed in segregation on June 30, 2019, he claims that he was also held in segregation from June 14, 2019 until June 19, 2019. (Doc. 1, p. 48). After

---

[17] Identified as Nurse Practitioner Jane Doe, but later in the Complaint, identified as Nurse Practitioner Stover. (*See* Doc. 1, p. 69).

Warren went to segregation, Sergeant Weaver allowed another inmate to pack up his personal property without supervision, which was in violation of administrative rules. When Warren left segregation, his personal property was missing, including important legal documents. (*Id.*). He  wrote down what was missing on the property sheet and gave the sheet to an unknown officer. (*Id.* at p. 49).

On September 12, 2019, Officers Kirkwood and Sloan retaliated against Warren for filing grievances regarding his conditions of confinement and lack of medical treatment while in the crisis cell by confiscating his legal work and documents. (Doc. 1, p. 45). Warren also states that he was retaliated against by Kirkwood and Sloan for filing grievances on Kirkwood and preparing to file a lawsuit on Lieutenant McDonald and Lieutenant Phillips. (*Id.*).

On September 24, 2019, while Warren was at the chow hall, Lieutenant McDonald "destroyed" his cell and stole items, including legal work. (Doc. 1, p. 47).

### *Inadequate Medical Treatment- Shoulder, Hernia, and Hearing Loss*

Warren alleges that on March 3, 2019, he injured his shoulder lifting weights. (Doc. 1, p. 64). On March 13, 2019, when he was in the health care unit for x-rays and lab work, he informed Nurse Practitioner Stover about his injury and that he was in severe pain. Stover refused to treat Warren's injury and told him he would need to pay another money voucher and put in another sick call to be seen for that issue. Warren asked for a bottom bunk permit so he would not further injure himself and to help with the pain he felt when he crawled in and out of the top bunk. (*Id.*). Stover refused. Because of a lack of funds, Warren did not put in another sick call. (*Id.* at p. 66). He continued, however, to

experience pain and loss of daily functions.

Warren eventually filed a nurse sick call request and was seen on May 21, 2019. (Doc. 1, p. 66). He was examined by Nurse Swelty. (*Id.*). Despite his shoulder being extremely swollen, Swelty documented that it was "slightly" swollen. (*Id.* at p. 67). Swelty referred Warren to see a medical doctor with no temporary relief. She did not provide Warren pain medication, an icepack, or a bottom bunk permit.

Warren saw Dr. Pittman for his should injury and associated pain on May 28, 2019. (Doc. 1, p. 67). She misdiagnosed him with a muscle strain and instructed him to do certain stretches but did not order x-rays or provide ice, an ice permit, pain medication, or a bottom bunk permit. (*Id.* at p. 68).

Warren's next medical appointment was canceled, and he was not seen for a follow-up until July 17, 2019. (Doc. 1, p. 69). He was seen by Nurse Practitioner Stover, but she did not properly exam him because his hands remained cuffed behind his back during the appointment. She gave Warren a muscle relaxer and Tylenol but did not order x-rays or provide a bottom bunk permit or ice permit. (*Id.*). The Tylenol did not relieve Warren's pain, and he was forced to continue to endure extreme pain. (*Id.* at p. 70).

On August 21, 2019, Warren had an x-ray that was ordered by Dr. Pittman. (Doc. 1, p. 70). He never saw or heard information regarding the results. On this same day, he was also diagnosed with a hernia. Dr. Pittman gave him stool softeners and other laxatives. He was also instructed to continue with stretching for his shoulder. Dr. Pittman told Warren that he would have to endure the hernia pain until he was released because nothing can be done. (*Id.*). He was again denied a bottom bunk permit. (*Id.* at p. 71).

In January 2020, Warren went to the healthcare unit for a blood test that Dr. Pittman had ordered. (Doc. 1, p. 71). Warren was escorted by Officer Crawford, who refused to uncuff Warren so that he could have his blood drawn "safely and comfortably." (*Id.*). Officer Crawford informed Warren that if did not have his blood draw while cuffed, then he would be recorded as refusing. Warren then refused because he did not want to be hurt and wrote on the form that he refused because he was "cuffed up." Crawford told Warren he would fill out a new form and write that Warren refused to sign. Crawford then began acting unprofessional towards Warren, insulting and antagonizing him. (*Id.*).

Warren continued to file grievances about the lack of adequate treatment for his shoulder and hernia. (Doc. 1, p. 72). On January 13, 2020, he saw Dr. Pittman for migraines caused when he fainted in his crisis cell and his shoulder injury. Dr. Pittman ordered physical therapy and blood tests and gave Warren ibuprofen. (*Id.*). He did not receive any physical therapy. (*Id.* at p. 73).

Warren also failed a hearing test for his left ear and should have seen an "ear doctor" within 6 weeks of the hearing test. (Doc. 1, p. 73). IDOC failed to meet this requirement. He has also not been provided ADA equipment while waiting to see a doctor for his hearing impairment. (*Id.*).

PRELIMINARY DISMISSALS

Warren lists Brookhart, the Warden of Lawrence, and Wexford Medical Corporation ("Wexford") in his case captions but fails to list them elsewhere in his Complaint. (Doc. 1, pp. 10, 23; Doc. 12). When a plaintiff has not included a defendant in

his statement of claim, the defendant cannot be said to be adequately put on notice of the claims directed against him or her. *See* FED. R. CIV. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Furthermore, the mere fact that these Defendants were in supervisory positions is insufficient to establish liability. The doctrine of *respondeat superior* does not apply to actions filed under 42 U.S.C. § 1983. *See Peterson v. Wexford Health Sources, Inc.*, 986 F. 3d 746, 754 (7 Cir. 2021) ("a corporation can be liable under § 1983 for its own policies and practices, not under a theory of *respondeat superior*"); *Smith v. Gomez*, 550 F.3d 613, 616 (7th Cir. 2008). Therefore, the claims against Brookhart and Wexford are dismissed without prejudice.

Warren also lists IDOC as a defendant in reference to his claims regarding unconstitutional conditions of confinement and resulting inadequate medical care. (Doc. 1, p. 11, 23). Because the IDOC is a state government agency and is not a person subject to suit under Section 1983, the constitutional claims against IDOC are dismissed without prejudice. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66-71 (1989); *Thomas v. Ill.*, 697 F.3d 612, 613 (7th Cir. 2012).

Warren claims that when he was housed in the cell with the insect infestation, the John Doe Officers in the control center ignored him when he pressed the panic button. (Doc. 1, pp. 26, 29, 30, 33). While a plaintiff may use the "John Doe" designation to refer to specific individuals whose names are unknown, a plaintiff will run afoul of the pleading standards in *Iqbal* and *Twombly* by merely asserting that a group of Lawrence correctional officers had violated his constitutional rights. *See Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (finding the phrase "one or more of the Defendants" did not

adequately connect specific defendants to illegal acts, and thus failed to adequately plead personal involvement). When a plaintiff does nothing but state that a group of staff harmed him without providing more, all he has done is establish that there is a "sheer possibility" that someone in that group harmed him. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 555. Warren may not know the name of individual defendants, but he must make plausible allegations against individuals, describing the "who, what, why, where, and how" that form the basis of the claim against that person. *See* Fed. R. Civ. P. 8(a)(2). To allow otherwise would be effectively allowing Warren to amend his Complaint further at will without review of this Court, a result contrary to both the local rules and § 1915A. Accordingly, John Doe Officers in the control center and any claims against them are also dismissed without prejudice as defendants.

Finally, the allegations regarding the mishandling and confiscation of Warren's property on June 14, 2019, asserted against Sergeant Weaver and an unknown property officer are also dismissed without prejudice. (Doc. 1, p. 48-49). These allegations are asserted against individuals who are not listed in the case caption (*Id.* at p. 46), and the Court will not treat parties not listed in the case caption as defendants. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005). Furthermore, this incident of property confiscation in June 2019 is not related to the unconstitutional conditions of confinement claims alleged, which resulted in grievances and the retaliatory confiscation of property in September 2019. Therefore, even if listed in the case caption, Sergeant Weaver and the unknown property officer are not properly joined as parties in this case. *See* Fed. R. Civ. P. 20(a)(2); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

Page 16 of 30

## DISCUSSION

Based on the allegations of the Complaint, the Court finds it convenient to designate the following Counts:

**Count 1:** Eighth Amendment claim against McDonald, Flatley, John Doe 1, John Doe 2, John Doe 3, John Doe 4, John Doe 5, John Doe 6, John Doe 7, Lieutenant John Doe, Lieutenant Jane Doe, and Sergeant John Doe 1 for holding Warren in unconstitutional conditions of confinement while he was on crisis watch from June 30, 2019, until July 2, 2019.

**Count 2:** Eighth Amendment claim against McDonald, Flatley, John Doe 1, John Doe 2, John Doe 3, John Doe 4, John Doe 5, John Doe 6, John Doe 7, Lieutenant John Doe, Lieutenant Jane Doe, Sergeant John Doe 1, Nurse Jane Doe 1, and Nurse Practitioner Stover for denying Warren adequate medical attention for his medical issues that occurred while he was on crisis watch from June 30, 2019, until July 2, 2019.

**Count 3:** Eighth Amendment claim against Lieutenant Phillips, John Doe 8, John Doe 9, John Doe 10, John Doe 11, John Doe 12, John Doe 13, John Doe 14, Sergeant John Doe 2, and Jane Doe 4 for holding Warren in unconstitutional conditions of confinement while he was in segregation from July 2, 2019 until July 12, 2019.

**Count 4:** Eighth Amendment claim against John Doe 12, John Doe 13, John Doe 14, Nurse Jane Doe 1, and Nurse Practitioner Stover for inadequate medical treatment after Warren swallowed bugs on July 7, 2019, resulting in difficulty breathing.

**Count 5:** First Amendment claim against Lieutenant McDonald, Lieutenant Phillips, Officer Kirkwood, and Officer Sloan for retaliating against Warren for filing grievances and a lawsuit.

**Count 6:** First Amendment claim of denial of access to courts against Lieutenant McDonald, Lieutenant Phillips, Officer Kirkwood, and Officer Sloan for confiscating Warren's legal documents.

| | |
|---|---|
| **Count 7:** | Fourteenth Amendment claim against Lieutenant McDonald, Lieutenant Phillips, Officer Kirkwood, and Officer Sloan for confiscating Warren's personal property without due process of law. |
| **Count 8:** | Eighth Amendment claim against Nurse Practitioner Stover, Nurse Swelty, and Dr. Pittman for inadequate medical treatment of Warren's injured shoulder. |
| **Count 9:** | Medical negligence claim against Nurse Practitioner Stover, Nurse Swelty, and Dr. Pittman for inadequate medical treatment of Warren's injured shoulder. |
| **Count 10:** | Eighth Amendment claim against Nurse Practitioner Stover, Nurse Swelty, and Dr. Pittman for inadequate treatment of Warren's hernia. |
| **Count 11:** | Medical negligence claim against Nurse Practitioner Stover, Nurse Swelty, and Dr. Pittman for inadequate medical treatment of Warren's hernia. |
| **Count 12:** | Eighth Amendment and ADA claim against IDOC for failing to accommodate Warren's hearing impairment. |

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.[18]**

## SEVERANCE

Rule 20 of the Federal Rules of Civil Procedure prohibits a plaintiff from asserting unrelated claims against different defendants or sets of defendants in the same lawsuit. Under Rule 20, multiple defendants may not be joined in a single action unless the

---

[18] *See Twombly*, 550 U.S. at 570.

plaintiff asserts at least one claim to relief against each respondent that arises out of the same transaction or occurrence or series of transactions or occurrences and presents a question of law or fact common to all. *George*, 507 F.3d at 607 (emphasis added); 3A MOORE'S FEDERAL PRACTICE § 20.06, at 2036–45 (2d ed. 1978).

Here, Warren's claims are improperly joined. The claims fall into three distinct groups: (1) Counts 1 through 7 arising from his time spent on crisis watch and disciplinary segregation; (2) Counts 8 through 11 arising out of inadequate treatment of his hernia and shoulder injury by Defendants Pittman, Stover, and Swelty; and (3) Count 12 arising from the denial of accommodation for his hearing loss. These three groups of claims involve different defendants and separate transactions or occurrences. Therefore, the Court will exercise its discretion and sever Counts 8-11 and Count 12 into two separate suits. *See* FED. R. CIV. P. 18, 20, and 21. *See also Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017); *Hinsley*, 635 F.3d at 952. Counts 1 through 7 will remain in this action, and the merits of these claims will be reviewed in this Order.

## MERIT REVIEW COUNTS 1 – 7

### Count 1

Warren has identified unsanitary cell conditions that support a claim for unconstitutional conditions of confinement. *See e.g., Johnson v. Pelker*, 891 F.2d 136, 139–40 (7th Cir. 1989) (finding that placing a prisoner in a cell for three days in which feces are smeared on the walls and there is no running water while ignoring his requests for cleaning supplies may violate the Eighth Amendment). *See also Vinning–El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007)) (collecting cases). Thus, Count 1 will proceed against Flately,

Lieutenant Jane Doe, Sergeant John Doe 1, and John Does 1-7, who Warren claims he notified about his cell conditions but failed to correct the situation.

Count 1, however, will be dismissed as to McDonald and Lieutenant John Doe because Warren does not assert any allegations or facts against these Defendants to support a claim that they knew about and acted with deliberate indifference towards his conditions of confinement while on crisis watch. Lieutenant John Doe escorted Warren to segregation for processing prior to placement in the crisis cell, and McDonald is not mentioned in the statement of facts at all. Therefore, Count 1 is dismissed as to Lieutenant John Doe and McDonald.

### Count 2

Warren claims that while on crisis watch he fainted multiple times due to complications with his medication and exposure to excessive heat. He notified John Does 3-7, Lieutenant Jane Doe, Sergeant John Doe 1, and Flatley of his medical complications, but he was denied medical care. Warren also alleges he was provided inadequate treatment for his injuries sustained from fainting multiple times from Nurse Jane Doe 1 and Nurse Practitioner Stover. Count 2 shall therefore proceed against John Does 3-7, Lieutenant Jane Doe, Sergeant John Doe 1, Flately, Nurse Jane Doe 1, and Nurse Practitioner Stover.

Count 2 shall be dismissed against John Doe 1 and John Doe 2. Warren alleges that John Doe 1 and John Doe 2 escorted him to the crisis cell on June 30, 2019, and they witnessed and verbally acknowledged the unsanitary conditions of the cell. He does not include any allegations that they later returned to the cell after he had fainted that

evening or knew of a serious risk to his health, and so, Count 2 is dismissed as to John Doe 1, and John Doe 2. Count 2 will also not proceed against McDonald and Lieutenant John Doe for the reasons stated in Count 1.

## Count 3

Warren's claims that he was held in a cell infested with bugs for ten days are sufficient for Count 3 to proceed against John Does 8-14, Lieutenant Phillips, Sergeant John Doe 2, and Jane Doe 4. *See Smith v. Dart,* 803 F. 3d 304, (7th Cir. 2015) (citing *Antonelli v. Sheahan*, 81 F. App'x 1422, 1431 (7th Cir. 1996)).

## Count 4

Warren alleges that after he swallowed bugs in his segregation cell, he continued to experience shortness of breath and when he laid down to sleep his throat would tighten, causing anxiety. (Doc. 1, pp. 33, 38). A tightening throat and "shortness of breath were objectively serious symptoms, and a lay person would understand the need for prompt medical attention." *Gully v. Hundley,* 2018 WL 1837015 at *4 (S.D. Ill. Apr. 18, 2018). *See also Perry v. Sims,* No. 19-1497, 2021 WL 800388 at *3 (7th Cir. Mar. 3, 2021) (a medical condition is serious if it has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would perceive the need for a doctor's attention). Furthermore, Warren is asthmatic, which contributes to the seriousness of his symptoms. Therefore, he has satisfied the objective component of an Eighth Amendment claim at the pleading stage. He also has sufficiently alleged that he notified John Doe 12, John Doe 13, and John Doe 14, Nurse Jane Doe 1, and Nurse Practitioner Stover that he was having difficulty breathing and needed medical attention and was refused. Thus,

Count 4 merits further review and shall proceed.

## Count 5

Warren has stated a viable claim for retaliation against Officers Kirkwood, Sloan, and Lieutenant McDonald for retaliating against Warren for filing grievances and a lawsuit by confiscating property, including legal documents. *See Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012). Accordingly Count 5 will proceed against Kirkwood, Sloan, and McDonald.

Count 5, however, is dismissed without prejudice as to Lieutenant Phillips. Lieutenant Phillips is mentioned in the case caption, but Warren has not included any factual allegations regarding Lieutenant Phillips conduct or involvement in the retaliation. (*See* Doc. 1, p. 45-47). *See Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) (liability does not "attach unless the individual defendant caused or participated in a constitutional violation").

## Count 6

Inmates have a "constitutional right of access to the courts," and prison officials who intentionally take or destroy an inmate's legal papers may be liable for a deprivation of this right. *Bounds v. Smith,* 430 U.S. 817, 821-22 (1977); *Gregory v. Nunn*, 895 F.2d 413, 415 (7th Cir. 1990) (citation omitted)). In order to state a viable claim for the denial of court access, a plaintiff must allege that he suffered from specific prejudice to his court access. *Shango v. Jurich*, 965 F.2d 289, 292 (7th Cir. 1992). Prejudice is more than mere delay in a case. The plaintiff must explain "the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction,

sentence, or prison conditions." *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009) (internal quotation and citation omitted); *accord Guajardo Palma v. Martinson*, 622 F.3d 801, 805-06 (7th Cir. 2010).

Here, Warren states that he was on a deadline for his post-conviction proceedings and the confiscation of his legal work caused him to have to start over from scratch, causing stress and emotional anguish. (Doc. 1, p. 47). He also asserts that documents relating to a Section 1983 action were taken, and his legal work was not returned. (*Id.* at pp. 49, 51). Other than delay and emotional stress, Warren has failed to identify actual prejudice to his post-conviction claim or Section 1983 civil action. *See Howard v. Webster,* 339 F. App'x 616, 618 (7th Cir. 2009) ("But because that right is to access the *courts* rather than legal materials or law libraries, an inmate will not have a valid claim unless the prison authorities' conduct prejudiced a potentially meritorious challenge to his conviction, sentence, or conditions of confinement." (citing *Ortiz,* 561 F. 3d at 671; *Bridges v. Gilbert,* 557 F. 3d 541, 553 (7th Cir. 2009)). Therefore, Count 6 is dismissed without prejudice.

The Court notes that Warren also claims that the confiscation of his legal work resulted in cruel and unusual punishment and violations of the Sixth Amendment and the Equal Protection Clause. (Doc. 1, p. 50). Warren has not articulated how confiscation of his legal work violated the Sixth Amendment or Equal Protection Clause. Furthermore, such conduct does not rise to the level of a constitutional violation under the Eighth Amendment, which prohibits conditions that "deprive inmates of minimal civilized measure of life's necessities." *Watford v. Pfister,* 811 F. App'x 374, 376 (7 Cir. 2020)

(citations omitted). Therefore, these claims are dismissed without prejudice.

### Count 7

Warren alleges that without due process Officers Kirkwood and Sloan confiscated his property on September 12, 2019, and Lieutenant McDonald confiscated his property on September 24, 2019. (Doc. 1, p. 50). He states that he is bringing a "tort claim" seeking damages for the stolen, damaged, and missing property. (*Id.* at p. 48).

However, Warren cannot maintain a federal constitutional claim for deprivation of his property. To state a property loss claim under the Fourteenth Amendment, there must have been a deprivation of property *without due process of law*. If the state provides an adequate remedy, then Warren has no civil rights claim. *Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984) (availability of damages remedy in state claims court is an adequate, post-deprivation remedy). In that vein, Illinois provides an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims. *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999); S*tewart v. McGinni*s, 5 F.3d 1031, 1036 (7th Cir. 1993); 705 Ill. Comp. Stat. 505/8 (1995). Therefore, Warren must pursue any property loss claim in that forum, and Count 7 will be dismissed without prejudice.

### IDENTIFICATION OF UNKNOWN DEFENDANTS

Claims shall be allowed to proceed against the John and Jane Doe Defendants, but these defendants must first be identified with particularity before service of the Complaint can be made on them. Plaintiff Warren will have the opportunity to engage in limited discovery to ascertain their identities. *Rodriguez*, 577 F.3d at 832. Deanna Brookhart, the current Warden of Lawrence Correctional Center, will remain as a

defendant in this action, in her official capacity only, for the purpose of responding to discovery aimed at identifying the unknown defendants by name and implementing any injunctive relief that may be ordered. Guidelines for discovery will be set at a later date. Once the names of the unknown defendants are discovered, Warren must file a motion to substitute each newly identified defendant in place of the generic designations in the caption and the Complaint.

### MOTION FOR RECRUITMENT OF COUNSEL

Warren has filed a Motion for Recruitment of Counsel (Doc. 3), which is denied.[19] Warren discloses that he has contacted three different lawyers in an attempt to recruit counsel and includes with his motion three letters from attorneys declining representation. Accordingly, he appears to have made reasonable efforts to retain counsel on his own. With respect to his ability to pursue this action *pro se*, Warren indicates that he has been designated "seriously mentally ill" and cannot comprehend the law. His limited knowledge and comprehension of the law, however, is not unique to him as a *pro se* litigant and does not necessarily warrant recruitment of counsel at this time. Furthermore, Warren has not explained how his mental health condition hinders his ability to litigate. Warren has filed a Complaint, which has survived screening, along with exhibits and additional motions, demonstrating an ability to construct coherent sentences and relay information to the Court. Given the early stage of litigation, it is difficult to accurately evaluate the need for assistance of counsel. Should his situation change as the

---

[19] In evaluating the Motion for Recruitment of Counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) and related authority.

case proceeds, Warren may file another motion setting forth all the facts that support his request.

**DISPOSITION**

**IT IS HEREBY ORDERED** that the Motion to Add Defendants (Doc. 12) is **GRANTED**. The Clerk of Court is **DIRECTED** to **ADD** the following Defendants to the docket: Dr. Pittman, Nurse Swelty, Lieutenant John Doe, John Doe 1, John Doe 2, John Doe 3, John Doe 4, John Doe 5, John Doe 6, John Doe 7, John Doe 8, John Doe 9, John Doe 10, John Doe 11, John Doe 12, John Doe 13, John Doe 14, Lieutenant Jane Doe, Sergeant John Doe 1, Sergeant John Doe 2, Jane Doe 4, *Mental Health Staff,* and Nurse Jane Doe 1. In light of these new John Doe designations, John Does 1-8 shall be **TERMINATED** from the docket.

**IT IS FURTHER ORDERED** that, for the reasons stated above, the Court **DISMISSES without prejudice** the claims brought pursuant to Section 1983 against Warden Brookhart, Wexford Medical Corporation, IDOC, John Doe Officers in the control center, Sergeant Weaver, and unknown property officer. The Clerk of Court is **DIRECTED** to **TERMINATE** Wexford Medical Corporation as a defendant.

**IT IS FURTHER ORDERED t**hat Counts 8-12 are **SEVERED** into two new case as follows:

| | |
|---|---|
| **First Severed Case:** | Counts 8, 9, 10, and 11 against Pittman, Stover, and Swelty; and |
| **Second Severed Case:** | Count 12 against the Illinois Department of Corrections. |

In each new case, the Clerk is **DIRECTED** to file the following documents:

Page 26 of 30

(1) The Complaint (Doc. 1);
(2) The Motion for Leave to Proceed *in forma pauperis* (Doc. 2);
(3) The Motion for Recruitment of Counsel (Doc. 3); and
(4) This Memorandum and Order.

**IT IS FURTHER ORDERED** that the <u>**only claims remaining in this action are Counts 1-7 against McDonald, Flatley, John Does 1-14, Lieutenant John Doe, Lieutenant Jane Doe, Sergeant John Doe 1, Nurse Jane Doe 1, Nurse Practitioner Stover, Lieutenant Phillips, Sergeant John Doe 2, Jane Doe 4, Officer Kirkwood, and Officer Sloan.**</u> The Clerk of Court is **DIRECTED** to **TERMINATE** Pittman, Swelty, and the Illinois Department of Corrections as defendants in this action. Warden Brookhart shall remain a defendant in her official capacity only for the purposes of responding to discovery aimed at identifying the unknown defendants and implementing any injunctive relief that may be ordered.

**IT IS FURTHER ORDERED** that

- **COUNT 1** shall proceed against Flatley, John Does 1-7, Lieutenant Jane Doe, and Sergeant John Doe 1, but is **DISMISSED** against McDonald and Lieutenant John Doe.

- **COUNT 2** shall proceed against Flatley, John Does 3-7, Lieutenant Jane Doe, Sergeant John Doe 1, Nurse Jane Doe 1, and Nurse Practitioner Stover, but is **DISMISSED** as to McDonald, John Does 1 and 2, and Lieutenant John Doe.

- **COUNT 3** shall proceed against Lieutenant Phillips, John Does 8-14, Sergeant John Doe 2, and Jane Doe 4.

- **COUNT 4** shall proceed against John Does 12-14, Nurse Jane Doe 1, and Nurse Practitioner Stover.

- **COUNT 5** shall proceed against Lieutenant McDonald, Officer Kirkwood, and Officer Sloan, but is **DISMISSED** as to Lieutenant Phillips.

- **COUNTS 6** and **7** are **DISMISSED without prejudice.** Because there are no surviving claims against Lieutenant John Doe, he is **DIMISSED without prejudice** and the Clerk of Court shall **TERMINATE** him as a defendant.

- The Motion for Recruitment of Counsel (Doc. 3) is **DENIED without prejudice.**

The Clerk of Court shall prepare for **McDonald, Flatley, Nurse Practitioner Stover, Lieutenant Phillips, Officer Kirkwood, Officer Sloan, the John/Jane Does** (once identified), and **Warden Brookhart** (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff Warren. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant cannot be found at the work address provided by Plaintiff Warren, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Because this suit addresses medical claims, the Clerk of Court is **DIRECTED** to

enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order.

If judgment is rendered against Warren, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Warren is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

IT IS SO ORDERED.

DATED: March 30, 2021

/s/ Mark A. Beatty
**MARK A. BEATTY,**
**United States Magistrate Judge**

**Notice to Plaintiff**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days or more**. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.